Erin Rose Ronstadt, SBN 028362
Kyle Shelton, SBN 027379
RONSTADT LAW, PLLC
PO Box 34145
Phoenix, AZ 85067
(602) 615-0050
(602) 761-4443 Fax
erin@ronstadtlaw.com
kyle@ronstadtlaw.com
*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Tamesha Brown,<br><br>                Plaintiff,<br><br>v.<br><br>Life Insurance Company of North America, a plan fiduciary, Cigna Disability Wrap Plan, an ERISA benefit plan, and CIGNA Companies, a plan fiduciary and the plan administrator,<br><br>                Defendants. | Case No.<br><br>**COMPLAINT** |

For her claims against Life Insurance Company of North America ("LINA"), Cigna Disability Wrap Plan (the "Plan"), and CIGNA Companies ("Cigna") (collectively "Defendants"). Plaintiff Tamesha Brown ("Ms. Brown" or "Plaintiff") alleges as follows:

## Jurisdiction, Venue, and Parties

1. This is an action for wrongful termination of long-term disability ("LTD") benefits, life insurance waiver of premium ("LWOP") benefits, and other harm arising out of the wrongful termination of those benefits.

2. This action arises under the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.* ("ERISA").

3. The Plan is an ERISA benefit plan established and maintained by Cigna for the benefit of its employees.

4. Ms. Brown was a participant and beneficiary of the Plan as an employee of Cigna.

5. LINA is a third-party claims administrator for the Plan.

6. LINA is a plan fiduciary.

7. LINA administers claims for LTD and LWOP benefits under the Plan using the trade name New York Life Insurance (f.k.a. Cigna Group Insurance).

8. Under the Plan, LINA fully insures eligible employees of Cigna for LTD benefits pursuant to Policy Number FLK-0546200 (the "LTD Policy") and LWOP benefits. Cigna did not disclose the life insurance policy.

9. At the time Ms. Brown sought LTD and LWOP benefits under the Plan, LINA administered claims for Cigna under the Plan, acted on behalf of the Plan, and acted as an agent of Cigna or the Plan to make final decisions regarding the payment of disability benefits for the Plan and administration of the Plan.

10. LINA insures LTD benefits under the Plan.

11. LINA is the entity that both pays LTD benefits and decides eligibility for them, creating a structural conflict of interest.

12. LINA and Cigna share a parent company.

13. There is no meaningful difference between Defendants LINA and Cigna.

14. Cigna is the Plan Sponsor, Plan Administrator, a plan fiduciary, and Ms. Brown's former employer.

15. LINA has a duty to administer the Plan prudently and in the best interests of all Plan participants and beneficiaries.

16. Ms. Brown is a United States citizen. She currently resides in Maricopa County, Arizona and has been a resident of Maricopa County since becoming a Plan participant.

17. LINA is domiciled in the State of Pennsylvania.

18.     LINA is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

19.     Cigna is domiciled in Pennsylvania.

20.     Cigna is licensed and authorized to do business in Maricopa County, Arizona, and resides and is found within Maricopa County within the meaning of the jurisdiction and venue provisions of ERISA, 29 U.S.C. § 1132 and 28 U.S.C. § 1391.

21.     This Court has jurisdiction over the subject matter of this action under ERISA, 29 U.S.C. §§ 1132(a), 1132(e)(1), and 28 U.S.C. §§ 2201-02 (declaratory judgments).

22.     Venue is proper in this Court under ERISA, 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1391(b).

## GENERAL ALLEGATIONS

23.     Ms. Brown suffers from several medical conditions, including Charcot-Marie-Tooth ("CMT") disease, thoracic and lumbar degenerative disc disease ("DDD"), myelopathy, small fiber peripheral neuropathy, and breast cancer.

24.     Her medical conditions cause a host of symptoms which severely diminish her ability and capacity to work.

25.     Based on her collective medical conditions, Ms. Brown is disabled and unable to perform any occupation as defined by the Plan.

26.     After eighteen (18) months of LTD benefits, the Plan defines 'Disability' as being "unable to perform all the material duties of any occupation for which he or she is, or may reasonably become, qualified based on education, training or experience" based on Injury or Sickness.

27.     On February 5, 2018, Ms. Brown started working at Cigna in the Business Operations Division as a Quality Review Audit Specialist.

28.     Ms. Brown stopped working on September 12, 2018 due to Disability.

29. Ms. Brown applied for and received short-term disability ("STD") payments from LINA through the maximum STD benefit period.

30. During the time of her employment with Cigna, Ms. Brown elected buy-up coverage for her LTD benefits.

31. Ms. Brown's LTD benefits are 65% of her 'Covered Earnings.'

32. LINA initially approved Ms. Brown's claim for LTD benefits in a letter dated April 15, 2019.

33. The LTD benefits approval was based, in part, on the April 9, 2019 medical file review of Heidi Dodge, RN. In her report, Ms. Dodge concluded that the evidence on file "does support the restrictions of bilateral lower extremity weakness and numbness affecting her ability to walk and no driving."

34. On October 3, 2019, Ms. Dodge conducted another medical file review, concluding that "the medical information on file at the time of the review does support inability to work."

35. On August 10, 2020, LINA ordered another medical review from Brandy Gaffney, RN. In her report, Ms. Gaffney identified several significant and debilitating findings in the medical records. Despite these findings, Ms. Brandy referred Ms. Brown's claim for a neurology review.

36. On August 26, 2020, Dr. Raam Sambandam conducted a neurology file review of Ms. Brown's LTD claim.

37. LINA never disclosed Dr. Sambandam's review to Plaintiff.

38. Dr. Sambandam was allegedly unable to make a determination on Ms. Brown's condition because Ms. Brown's treating providers purportedly did not provide their opinions.

-4-

39. Instead of properly evaluating the medical evidence and Ms. Brown's credible symptoms, or even notifying Ms. Brown of the need for clarification, LINA attempted to send Ms. Brown to an Independent Medical Examination ("IME").

40. This IME would have taken place amidst the height of the COVID-19 pandemic.

41. Ms. Brown was reluctant to attend an IME due to COVID-19 related health concerns.

42. In lieu of an IME, on December 8, 2020, Mr. Gaffney conducted a follow-up medical file review on Ms. Brown's claim.

43. In this file review, Mr. Gaffney reviewed an October 7, 2020 Physical Ability Assessment form completed by Ms. Brown's treating provider Joshua Youngberg, PT, which found restrictions and limitations that were work preclusive.

44. In his report, Mr. Gaffney agreed with Mr. Youngberg's assessment and concluded that the "medical on file would continue to support [Disability]."

45. On December 9, 2020, LINA referred Ms. Brown's claim for a Transferable Skills Analysis ("TSA").

46. LINA never disclosed the complete TSA.

47. In its December 9, 2020 internal notes, LINA reversed its prior assessment without explanation: "CM recommends closing claim for [any occupation]. [Ms. Brown] is not disabled from [any occupation] as evidenced by TSA producing occupations within [Ms. Brown's] work experience, education level and wage requirements."

48. There is an obvious discord from Mr. Gaffney's December 8, 2020 medical file review and the December 9, 2020 TSA report. Cigna offered no clarification or explanation whatsoever for this change in direction within the course of one day.

49. In a letter dated December 10, 2020, LINA terminated Ms. Brown's LTD benefits stating that she is no longer disabled under the 'Any Occupation' definition of Disability (the "Denial").

50. The TSA report was cited as evidence for the Denial.

51. In the Denial, Cigna also failed to adequately consider Ms. Brown's award of Social Security Disability Insurance ("SSDI") benefits.

52. LINA denied Ms. Brown's LTD claim despite there being overwhelming evidence of her Disability.

53. On June 7, 2021, through legal counsel, Ms. Brown appealed the Denial (the "Appeal").

54. During the initial appellate review, LINA received additional compelling evidence of Ms. Brown's Disability.

55. The additional medical evidence provided with the Appeal further substantiates Ms. Brown's Disability under the Plan. This includes additional relevant evidence, including objective medical findings relating to the Disability.

56. On June 18, 2021, Ms. Brown attended a Functional Capacity Evaluation ("FCE") to determine her level of functionality.

57. The FCE report concluded that "Ms. Brown does not possess the fitness-for-duty or functional capacity to perform any work, including all types of "Sedentary" exertional level work on a regular and consistent basis per exertional levels as outlined in the Standard of U.S. Department of Labor as defined in the Dictionary of Occupational Titles (DOT)."

58. The functional evaluator's conclusions are based on several hours of objective testing.

59. Research shows that FCE findings are highly predictive of how an individual will perform in the world of work and, therefore, are relevant for predicting work function.

-6-

Ms. Brown's FCE findings are reliable objective evidence of her lack of functional ability. LINA must give significant weight to these findings.

60. In an August 27, 2021 assessment, Ms. Brown's treating neurologist, Dr. Sivakumar, agreed with the FCE findings, restrictions, and limitations.

61. LINA knows that FCEs are gold standards for determining a claimant's functionality; yet, it and its peer reviewers consistently and willfully ignored the FCE.

62. On July 27, 2021, during the Appeal review, LINA had Randy Norris conduct a TSA.

63. Mr. Norris routinely conducts TSAs for LINA and provides biased opinions that result in the termination of otherwise valid claims.

64. Mr. Norris identified occupations that Ms. Brown could purportedly perform in direct contradiction to the opinions of her treating providers.

65. LINA provided its physicians/consultants with each other's reports and other previous medical file reviewer reports. Allowing peer reviewers to influence each other effectively reduces the independence of their respective reports. When peer reviewers share their bias, they tend to make similar errors. This is another example of how LINA has failed to conduct a full and fair review.

66. On October 20, 2021, Ms. Brown underwent a bilateral breast ultrasound, which revealed two irregular masses. A biopsy confirmed "invasive ductal carcinoma, preliminary Nottingham grade 3."

67. In a letter dated November 19, 2021, Ms. Brown responded to adverse evidence generated by LINA through legal counsel.

68. This letter included information about Ms. Brown's breast cancer diagnosis.

69. In a letter dated November 30, 2021, LINA upheld its previous decision and denied Ms. Brown's appeal (the "Final Denial").

RONSTADT LAW, PLLC
P.O. Box 34145, Phoenix, AZ 85067
6122 N. 7th Street, Suite B, Phoenix, AZ 85014
(602) 615-0050

70. In denying Ms. Brown's appeal, LINA failed to give proper weight to Ms. Brown's cancer diagnosis.

71. The Final Denial revealed LINA had once again relied upon the opinions of paid, non-examining consulting physicians, as opposed to the opinions of Ms. Brown's treating providers.

72. LINA disregarded the well-documented and work-preclusive opinions of Ms. Brown's treating physicians.

73. LINA's pattern of suppressing or ignoring objective information supporting Ms. Brown's claim for benefits illustrates its bias in claims handling and its breach of fiduciary duty.

74. Ms. Brown cannot perform the material duties of her Regular Occupation or of Any Occupation and therefore comes within the definition of Disability under the Plan.

75. Ms. Brown has experienced significant financial harm flowing from the wrongful termination of her benefits.

76. Ms. Brown depleted her emergency savings to help meet her financial obligations after the termination of her LTD benefits.

77. Ms. Brown had to withdraw funds from her 401K retirement fund to survive.

78. Ms. Brown was forced to downsize and move to a new home secondary to her loss of LTD benefits.

79. Due to the arbitrary termination of her benefits, Ms. Brown has experienced hardships in affording some necessary medical treatment and medications.

80. Ms. Brown exhausted her administrative remedies and timely filed this lawsuit.

**COUNT I**
**(Recovery of LTD Plan Benefits)**
**(Defendants LINA, Cigna, and the Plan)**

81. All other paragraphs are incorporated by reference.


82. The plan is an Employee Welfare Benefit Plan as defined in ERISA, 29 U.S.C. § 1002.

83. The Plan represents LTD coverage and a promise to provide LTD benefits until Ms. Brown is no longer Disabled under the terms of the Plan.

84. Ms. Brown is Disabled from Any Occupation under the terms of the Plan.

85. Ms. Brown has claimed the benefits under the Plan to which she is entitled.

86. Ms. Brown reasonably expected that her medical conditions met the requirements of Disability as defined by the Plan and that she would receive benefits under the Plan until she reaches age 65 or until she was no longer Disabled.

87. Despite the coverage of Ms. Brown's Disability, LINA improperly terminated her LTD benefits in breach of the Plan and ERISA.

88. LINA's conduct was arbitrary, capricious, an abuse of discretion, not supported by substantial evidence, and clearly erroneous.

89. In light of LINA's wholesale and flagrant procedural violations of ERISA, Ms. Brown should be entitled to *de novo* review. *See Halo v. Yale Health Plan*, 819 F.3d 42, 60-61 (2d Cir. 2016) ("when denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503-1, will result in that claim being reviewed *de novo* in federal court, unless the plan has otherwise established procedures in full conformity with the regulation and can show that its failure to comply with the claims-procedure regulation in the processing of a particular claim was inadvertent and harmless.")

90. Instead of evaluating a participant's eligibility based on the applicable plan language and medical evidence, Ms. Brown is informed and believes that LINA makes claims decisions based on the claims resources and financial risk it faces on certain claims.

91. LINA wrongfully denied Ms. Brown's Disability benefits without providing a coherent explanation for its denials, and in a way that conflicts with the plain language of the Plan, violating 29 U.S.C. § § 1109, 1132.

92. LINA did not properly consider all the available evidence when terminating Ms. Brown's benefits.

93. LINA failed to conduct a full and fair review.

94. LINA misstated medical evidence for its own financial benefit, *e.g.*, it excessively relied on biased medical reviews provided by in-house medical consultants.

95. LINA relied on findings that constitute "clearly erroneous findings of fact" to deny Ms. Brown's benefits.

96. LINA abused its discretion by basing its decision on unreliable and inaccurate information. When confronted with this knowledge, LINA ignored the inaccuracies or created new reasons for denial.

97. Upon information and belief, LINA provided its reviewers with internal notes and financial information about the claim, compromising their ability to make "independent" medical determinations and creating further bias in reviews.

98. LINA routinely emphasizes information that favors a denial of benefits while deemphasizing other information that suggests a contrary conclusion.

99. LINA failed to properly consider the opinions of Ms. Brown's treating and examining physicians and independent experts.

100. In terminating Ms. Brown's LTD benefits, LINA completely disregarded evidence that Ms. Brown's conditions had not changed or improved.

101. LINA has no evidence that Ms. Brown's conditions changed or improved since it determined that she met the Any Occupation definition of Disability.

102. Upon information and belief, LINA used in-house reviewers in evaluating Ms. Brown's claim, because it presumed that the in-house reviewers' recommendations would be unfavorable for the continuation of Ms. Brown's benefits.

103. LINA failed to adequately explain why it credited the physician reviewers over Ms. Brown's treating physicians, who had personally examined her on a multitude of occasions.

104. LINA engaged in other procedural irregularities, which it did to serve its own financial best interests or the best financial interests of Cigna.

105. On information and belief, LINA engaged in claim discussions to decide the directions of appeals without having reviewed all the medical evidence, demonstrating its predetermined path of terminating benefits.

106. LINA intentionally gathered evidence to stack the deck in its favor and against Ms. Brown.

107. Ms. Brown alleges upon information and belief that LINA and Cigna have a parsimonious claims handling history.

108. LINA failed to conduct a "meaningful dialogue" regarding Ms. Brown's claim.

109. Under the de novo standard of review, to be entitled to benefits, Ms. Brown need only prove by a preponderance of the evidence that she is Disabled.

110. Even under the abuse of discretion standard of review, LINA abused its discretion, because its decision terminating Ms. Brown's disability benefits was arbitrary and capricious and caused or influenced by LINA's, its reviewing physicians,' and its vendors' financial conflicts of interest. These conflicts of interest precluded the full and fair review required by ERISA, 29 U.S.C. 1133(2) and 29 C.F.R. § 2560.503-1(g)(1) and (h)(2).

111. Ms. Brown is entitled to discovery regarding the effects of the procedural irregularities and structural conflict of interest that infiltrated the claims handling process

and also regarding the effects of LINA's, its reviewing physicians', its employees', and its vendors' financial conflicts of interest, biases, and motivations on the decision terminating Ms. Brown's LTD claim.

112. Under the de novo standard of review, Ms. Brown is entitled to discovery regarding, among other things, the credibility of LINA's medical reviews and LINA's lack of partiality due to its financial conflicts of interest. *Opeta v. Nw. Airlines Pension Plan for Contract Employees*, 484 F.3d 1211, 1217 (9th Cir. 2007) (under the de novo standard of review, new evidence may be admitted regarding, among other things: "the credibility of medical experts… [and] instances where the payor and the administrator are the same entity and the court is concerned about impartiality" (*quoting Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1026-27 (4th Cir. 1993)).

113. Pursuant to the coverage provided in the Plan, to ERISA 29 U.S.C. § 1132(a)(1)(B), and to applicable federal law, Ms. Brown is entitled to recover all benefits due under the terms of the Plan, and to enforce her rights under the Plan.

114. Ms. Brown is entitled to reinstatement of any other employee benefits that were terminated, discontinued, or suspended as a result of the termination of her disability benefits, including, but not limited to LWOP benefits. She is entitled to a restoration of the *status quo ante* before LTD benefits were wrongfully terminated.

115. Under ERISA, which is founded in trust principles, LINA and Cigna are required to administer claims in the best interests of beneficiaries and participants as part of its fiduciary duty.

116. In multiple ways throughout the administration of Ms. Brown's claim, LINA and Cigna breached their fiduciary duties pursuant to 29 U.S.C. § 1132(a)(3).

117. LINA's arbitrary and capricious claims handling generally constitutes a breach of fiduciary duty, because LINA's claims handling was discharged imprudently and caused Ms. Brown serious harm that cannot be recovered under 29 U.S.C. § 1132(a)(1)(B).

118. LINA failed to reasonably investigate Ms. Brown's claim.

119. LINA ignored meaningful, objective evidence of Ms. Brown's ongoing Disability, including the opinions of her treating provider and an independent expert, as well as her breast cancer diagnosis.

120. LINA employed biased reviewers with longstanding insurance industry ties to generate unfavorable medical opinions resulting in the termination of Ms. Brown's LTD claim.

121. LINA's conduct evinces an outcome-oriented approach to Ms. Brown's claim.

122. On information and belief, LINA instructs and/or incentivizes certain employee(s) to terminate fully insured LTD claims and appeals based on bias or its financial interests.

123. Ms. Brown is informed and believes that LINA's employees are trained in administering claims in the best interests of LINA, not Plan participants.

124. LINA demonstrated bias and malice against Ms. Brown through its employees. Instead of fully and fairly reviewing the medical evidence, LINA unreasonably denied Ms. Brown's claim based on unreliable evidence.

125. Ms. Brown is informed and believes that LINA has targeted claims under the Plan, including Ms. Brown's, which is a breach of fiduciary duty.

126. On information and belief, LINA and Cigna breached fiduciary duties to Ms. Brown by terminating her claim to avoid its financial liability.

127. To the extent that LINA and Cigna caused Ms. Brown harm unrecoverable under 29 U.S.C. § 1132(a)(1)(B), then that harm is recoverable under 29 U.S.C. § 1132(a)(3).

128. The Court has broad discretion to fashion appropriate relief to make Ms. Brown whole and should mold the relief necessary to protect the rights of Ms. Brown.

129. Ms. Brown is entitled to enjoin any act or practice by LINA that violates ERISA or the Plan or seek other appropriate equitable relief.

130. LINA was unjustly enriched because of its breach of fiduciary duty violations, because it wrongfully withheld Ms. Brown's benefits for its own profit.

131. LINA and Cigna engaged in several procedural violations to circumvent its obligations under ERISA, which is conduct the Court can enjoin.

132. LINA acted with malice and in bad faith against Ms. Brown, which constitutes a violation of its fiduciary obligations.

133. Ms. Brown suffered actual, *significant* financial harm and has incurred expense.

134. Ms. Brown is entitled to prejudgment interest on the benefits to which she is entitled and on her damages at the highest legal rate until paid in full.

135. Pursuant to 29 U.S.C. § 1132(g), Ms. Brown is entitled to recover her attorneys' fees and costs incurred herein.

### COUNT II
### (Statutory Penalties for Failure to Provide Plan Documents)
### (Defendant Cigna)

136. All other paragraphs are incorporated by reference.

137. Pursuant to 29 U.S.C. § 1132(c)(1)(B), "any administrator who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."

138. Under 29 U.S.C. § 1024(b)(4), "[t]he administrator shall, upon written request of any participant or beneficiary furnish a copy of the latest updated summary plan

-14-

description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."

139. The disclosure requirements of ERISA are not empty suggestions for fiduciaries. The disclosure requirements amount to specific guidelines imposed for the purpose of ensuring that plan participants can follow and gauge the availability and character of ERISA Plan, including the very structure of the benefit plan itself. Without adequate disclosure, a participant cannot know or enforce her rights to benefits or anticipate alterations in benefits under the Plan.

140. As the Plan Administrator, Cigna is subject to disclosure obligations under ERISA.

141. On January 25, 2021, Ms. Brown requested Plan documents from Cigna via Certified Mail.

142. Per the certified mailing receipt, Cigna received Ms. Brown's Plan document request on February 3, 2021.

143. Under ERISA 502(c), 29 U.S.C. 1132(c), Cigna had a duty to produce the requested Plan documents on or before March 5, 2021.

144. Cigna failed to disclose the Plan documents on or before March 5, 2021.

145. On March 17, 2021, Ms. Brown sent a second request for Plan documents to Cigna via Certified Mail.

146. Cigna received the second Plan documents request via Certified Mail on March 23, 2021.

147. Cigna did not respond to Ms. Brown's second request for Plan documents or otherwise produce disclosures pursuant to ERISA.

148. On May 27, 2021, Ms. Brown sent a third request for Plan documents to Cigna via Certified Mail.

149. Cigna received the third Plan documents request via Certified Mail on June 7, 2021.

150. Cigna did not respond to Ms. Brown's third request for Plan documents or otherwise produce disclosures pursuant to ERISA.

151. On July 26, 2021, Ms. Brown sent a fourth request for Plan documents to Cigna via Certified Mail.

152. Cigna received the fourth Plan documents request via Certified Mail on August 2, 2021.

153. On September 8, 2021, Cigna finally produced Plan documents, but its disclosure was deficient.

154. Cigna's actions have prejudiced Ms. Brown, in part because its failure has prevented her from ascertaining the details of her coverage, including discretionary authority.

155. Ms. Brown is informed and believes Cigna has made no good faith effort to respond to Ms. Brown's written requests for Plan documents.

156. Cigna has not substantially complied with its ERISA obligations.

157. As the Plan Administrator, Cigna is liable to Ms. Brown for its failure to properly disclose documents pursuant to 29 U.S.C. § 1132, et. seq.

158. Under 29 U.S.C. § 1132(c)(1), the Court may impose a statutory penalty of up to $110 per day[1] for each day that the Plan Administrator fails to provide a complete and proper disclosure of Plan documents.

159. In light of Cigna's conduct, the Court should impose the harshest sanction available.

160. Penalties began to accrue thirty (30) days after the date a written request to the Plan Administrator is made for plan documents.

---

[1] As required by the Debt Collection Improvement Act of 1996, the $100 limit has been increased to $110 for violations after July 29, 1997. 62 Fed. Reg. 40696.

161. Ms. Brown is entitled to penalties, as well as interest, costs, and attorneys' fees, for the approximately 187 days Cigna failed to provide Plan documents. To the extent Cigna has not provided complete disclosures, penalties continue to accrue under ERISA.

**WHEREFORE**, Ms. Brown seeks judgment against Defendants as set forth in this Complaint, which includes:

A. All past LTD benefits under the terms of the Plan;

B. Clarifying and determining Ms. Brown's rights to future benefits under the terms of the Plan;

C. For any other benefits Ms. Brown may be entitled to receive under the Plan due to her disability;

D. An award of attorneys' fees and costs incurred herein;

E. An award of prejudgment interest on benefits and damages at the highest legal rate until paid; and

F. For such and further relief as the Court deems just, equitable, and reasonable.

Dated: August 19, 2022.

RONSTADT LAW, PLLC

By: *s/ Erin Rose Ronstadt*
Erin Rose Ronstadt
Kyle Shelton
*Counsel for Plaintiff*